**HIGHLANDS CABLE TELEVISION, INC., et al., Appellants,**

**v.**

**Mitchel WONG et al., Appellees.**

**No. 12438.**

Court of Civil Appeals of Texas, Austin.

Jan. 26, 1977.

Rehearing Denied March 9, 1977.

Robert A. Rowland, Mueller & Rowland, Austin, for appellants.

Robert J. Hearon, Jr., Owen L. Roberts, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for Mitchel Wong.

Wayne Prescott, Brown, Maroney, Rose, Baker & Barber, Austin, for R. A. Dennison.

O'QUINN, Justice.

The parties to this action are Highlands Cable Television, a corporation, and all of its five stockholders.

In connection with purchase and improvement of a cable television system in the area comprising and surrounding the city of Marble Falls, Highlands Cable in 1971 borrowed substantial sums of money from the City National Bank of Austin, and granted City National deed of trust liens and security interests on substantially all of its corporate assets. As a condition of the loan, each of the five stockholders executed separate guaranty contracts agreeing to pay to the bank, jointly and severally, "any and all indebtedness" which Highlands "may now or at any time hereafter owe," together with interest and collection costs.

Three of the stockholders owned one-seventh each of the corporate stock, and two of the stockholders owned two-sevenths each of the stock. The stockholders agreed among themselves that each would be liable for the indebtedness of Highlands in proportion to stock owned by the individual, but it is undisputed that each stockholder recognized his liability to City National for the entire amount of the indebtedness.

When Highlands defaulted on its note in October of 1971, in the principal sum of $367,500.00, City National made demand for payment in full on each of the guarantors. Mitchel Wong, one of the stockholders and an appellee in this appeal, notified the bank of his willingness to pay one-seventh of the liability, provided the other shareholders paid the remaining six-sevenths. In recognition of his full liability under the guaranty, Wong further proposed that if City National failed to receive payment in full in this manner, Wong would make "suitable arrangements concerning cash payment of the balance due the Bank in a manner which would protect his rights against the other guarantors in accordance with their agreement, as well as subrogate him to any rights the Bank may have as to collateral."

No other guarantor performed, and Wong, in February of 1975, paid City National $381,541.53, being $367,500.00 as principal and $14,041.53 accrued interest. The bank endorsed the note to Wong without recourse, and executed in his favor formal assignment of the note and all security, including all rights City National had against the other guarantors.

No payments were made by any of the other guarantors, although Wong and A. R. Dennison, one of the guarantors, did reach an agreement concerning Dennison's payment to Wong of two-sevenths of the liability, being the proportionate amount of the stock held by Dennison. No agreement was made with Highlands or with any other stockholder as guarantor.

Thereafter Wong and Dennison brought this suit against Highlands for the amount due on the note, plus attorney's fees, and for foreclosure of the liens, and also sued William R. Turpin, Albert A. LaLonde and Elwood L. Munson, the remaining three of the five stockholders, for their proportionate share (four-sevenths) of any deficiency.

Trial was to the court without a jury, after which the court entered judgment for Wong and Dennison against Highlands for $381,541.53, being the balance due on the note when Wong acquired it in February of 1975, together with interest from that date till paid, and for attorney's fees in the sum of $38,154.15, the amount provided under terms of the note. The judgment also provided for interest from date of judgment and ordered foreclosure of the liens and security agreements, with receivers appointed to sell the collateral and to apply all proceeds, after expenses, to costs of suit and to the judgment against Highlands.

The trial court also entered judgment against each of the three stockholders named defendants in the suit, in proportion to individual ownership of stock in Highlands, for a total four-sevenths of any deficiency remaining unpaid on the judgment against Highlands after application of proceeds from sales of collateral.

Highlands and the three guarantor-stockholders sued by Wong and Dennison have appealed and bring three points of error, under which the main issue is whether they are liable for attorney's fees in the amount of $38,154.15. Appellants concede that there is no dispute by Highlands that it is indebted to appellees in the sum of $381,-541.53, plus interest from the date Wong paid City National and took an assignment of the note; and the individual appellants concede that they are indebted to Wong to the extent of their respective contributive shares of the $381,541.53 plus interest.

Appellants contend that the remedy of appellees against appellants is by an action in contribution, and that the judgment should have been limited to their respective obligations to repay Wong for the money he advanced to discharge their guaranties, plus interest on such money.

We will overrule the points of error and affirm the judgment of the trial court.

The note Highlands executed and delivered to City National expressly provided for payment of attorney's fees in the amount of ten percent of principal and interest if the note should be placed in the hands of an attorney for collection or if suit should be brought. Under each of the guaranty agreements executed by the several stockholders, the guarantors agreed "to pay 10% of the indebtedness additional as attorney's fees should this contract be placed in the hands of an attorney for collection or should it be collected through any court."

The guaranty agreements further provided: "This guaranty shall inure to the benefit of the transferee, assignee, or holder of the principal debt; however, all indebtedness to the Creditor shall first be paid in full, before the assignee of any debt guaranteed shall receive any benefit of this contract of guaranty."

Appellees base their lawsuit on the debt evidenced by the note in the principal sum of $367,500, the separate guaranty agreements signed by appellees as well as appellants, and the undisputed agreement among all the guarantors that each would pay his proportionate share of the indebtedness evidenced by the note held by City National. It is not disputed that Wong, as one of the guarantors, paid the note in full, together with interest to date, and received from City National an assignment of the note and the security from City National.

Under the Texas Uniform Commercial Code "Transfer of an instrument vests in the transferee such rights as the transferor has therein . . ." (Sec. 3.201, V.T. C.A., Bus. & C.)

The Code further states:

"Payment or satisfaction may be made with the consent of the holder *by any person* including a stranger to the instrument. Surrender of the instrument *to such a person* gives him the rights of a *transferee* (Section 3.201)." (Sec. 3.603(b), V.T.C.A., Bus. & C.) (Emphasis added)

■ Wong and Dennison elected to prosecute this action "on the very debt itself," evidenced by the note and the securities, including the individual guaranty agreements. The Supreme Court held in 1931 that ". . . payment by a party secondarily liable, other than the principal debtor

or party accommodated, does not discharge or extinguish the debt." *Fox v. Kroeger,* 119 Tex. 511, 35 S.W.2d 679, 681, col. 2 (1931). In that case the Supreme Court announced the rule that in Texas ". . . where the surety pays the debt of the principal, [thereafter he may elect to bring an action on assumpsit or on the obligation implied to be reimbursed by the principal] or he can prosecute an action *on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority.*" (35 S.W.2d 681, col. 1) (Emphasis added)

Shortly after the decision in *Kroeger* was announced, the Eastland Court of Civil Appeals withdrew an earlier opinion to follow the holding of the Supreme Court and held that the person making payment thereby acquired the right to bring an "action on the note for that amount, *with interest and attorney's fees . . .*" *Self v. Thompson,* 35 S.W.2d 245 (Tex.Civ.App. Eastland 1931, no writ). (Emphasis added) The rule in *Kroeger* was applied in the recent decision of the San Antonio Court of Civil Appeals in *Seale v. Hudgens,* 538 S.W.2d 459 (Tex.Civ.App. San Antonio 1976, writ dism'd), in which the court held that the surety paying the debt may sue on the debt itself and in such action stands in the shoes of the original creditor "as to any securities and rights of priority."

Appellants argue in effect that neither the statutes nor the rule in *Kroeger,* followed consistently since 1931, permit recovery against them for more than their proportionate shares of the principal and interest on Highlands' debt, and that they are not liable for attorney's fees, although both the note and the guaranty agreements provide for liability for attorney's fees. We hold that appellees stand in the shoes of City National, the original creditor, and that the trial court properly rendered judgment against the individual appellants for their respective shares on such deficiency as may exist on the judgment against Highlands.

Appellants argue under their second point of error that appellees failed to prove that they had agreed to pay their attorneys any specified amount as fees and that the judgment allowing attorney's fees is not supported by any evidence, but rests only upon a presumption. Appellees pleaded and proved placement of the note and guaranty agreements in the hands of their attorneys for enforcement and collection. Thus proof was made of the contingency which made attorney's fees payable under both instruments.

■ The rule is well settled that as between the owner of the note and the person obligated to pay, the owner is *prima facie* entitled to recover attorney's fees stipulated in the writing "upon the happening of the contingency which makes the same payable." *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948, 950 (1960). In *Schmidt* the Supreme Court made clear that "In the absence of an issue affirmatively tendered by the defendant, it is not necessary for the plaintiff to prove an agreement to pay such fee to an attorney or that the same is reasonable."

■ Appellants did not plead either the lack of an agreement to pay such attorney's fees or that the fees were unreasonable. We find no evidence in the record showing or tending to show that the actual fees agreed to be paid by appellees, in the collection and enforcement of the note and guaranty agreements, will be less than the amount provided for in the note, or that the fees are or will be in an amount that is unreasonable. In the absence of pleading and proof that the amount of attorney's fees contracted for in the note is unreasonable, proof of reasonableness is not required. *International Shelters v. Corpus Christi State National Bank,* 475 S.W.2d 334, 336 (Tex.Civ.App. Corpus Christi 1971, no writ).

■ Although appellants admit on appeal that they are liable for their proportionate parts of the amount Wong paid City National to obtain assignment of the note and guaranty contracts, appellants have paid no part of such obligations, by reason of which appellees were obligated to bring this law-

suit. With transfer of the note and security by City National, appellees stand in the shoes of City National as the original creditor having contractual rights to attorney's fees provided in the note and guaranty agreements.

The trial court correctly awarded judgment for an amount attributable to attorney's fees, which appellants had expressly contracted to pay, the judgment being supported by the pleadings and evidence.

■ Finally, appellants contend that the trial court erred in refusing to grant a new trial on evidence offered at the hearing on the motion. The evidence offered was elicited from Wong and one of his counsel, who were present and participating in the trial. By such evidence, appellants sought to show lack of agreement between appellees and counsel upon the amount of attorney's fees.

This contention is without merit for several reasons. Appellants offered no evidence at the hearing which could not have been offered at trial by examination of witnesses testifying or otherwise available in the courtroom during trial. 41 Tex. Jur.2d *New Trial*, sec. 112. The evidence offered at the hearing would not have been admissible at trial since appellants failed to plead lack of agreement as to attorney's fees or the unreasonableness of such fees if agreed upon. No evidence offered at the hearing on motion for new trial amounted to proof that the attorney's fees incurred by appellees would be less than the amount awarded by the judgment.

We conclude that the trial court did not abuse its discretion in denying appellants a new trial.

The judgment of the trial court is affirmed.

Affirmed.